**THE LAW FIRM, PLLC**
Derek A. Jordan, BPR No. 34299
W. Alan Rose, BPR No. 28903
Corey A. Spearman, BPR No. 40495
111 N.W. Atlantic Street
Tullahoma, TN 37388
Tel: (931) 222-4010
Email: derek@thefirm.law
       alanrose@thefirm.law
       coreyspearman@thefirm.law
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| CHRYSTAL BROWN, | ) | |
|     Plaintiff, | ) | |
| v. | ) | Case No. |
| COUNTY OF HAMILTON, TENNESSEE, HAMILTON COUNTY SHERIFF JIM HAMMOND, QCHC OF TENNESSEE, PLLC, and DOES 1-15, INCLUSIVE, | ) | |
|     Defendants. | ) | |

## **FEDERAL COMPLAINT WITH JURY DEMAND**

COMES NOW, Plaintiff Chrystal Brown, as next-of-kin of DaQuarrius "Jay" Brown, by and through her below signed attorneys of record, and as for her claims of action against the above-named Defendants, alleges and shows claims for relief as follows:

### I. BACKGROUND

1. This is a civil rights action brought under the Eighth Amendment to the Constitution of the United States and Title 42 of the United States Code, Section 1983 and 1988. Plaintiff brings this action to obtain compensatory damages, punitive damages, attorneys' fees, costs, and other equitable relief for the death of her son, DaQuarrius "Jay" Brown, who died

while in the custody of, and due to the deliberate indifference of, Hamilton County, the Hamilton County Sheriff's Office, and the deputies at the Silverdale Detention Center in Chattanooga, Tennessee (hereinafter "Silverdale.")

2. Silverdale has long had the reputation of being a poorly run and dangerous jail. Inmates have been attacked and injured by other inmates armed with makeshift weapons, including stabbings with "shanks," or jail knives. Silverdale inmates also have died due to medical neglect and maltreatment by staff, prompting numerous lawsuits.

3. This state of affairs is well-known, as was evidenced in mid-February of 2020, when federal Judge Sandy Mattice, after consultation with federal Judge Travis McDonough, directed all fifty-two federal inmates housed in Silverdale to be transferred out of Silverdale and put into neighboring facilities due to concern for the inmates' safety.

4. Hamilton County took over operations of the formerly privately-run jail in December of 2020, but medical neglect by officials has continued.

5. DaQuarrius "Jay" Brown (hereinafter "Mr. Brown"), died on May 26th, 2022, at Erlanger Hospital, only four months after he first entered Silverdale as a healthy twenty-three-year-old man. Mr. Brown's death was entirely preventable. When he arrived at Silverdale in early February of 2022, he was HIV-positive and suffered from asthma, but like the one million other Americans with HIV, modern medicine had allowed him to live a happy, healthy, and fulfilling life. Silverdale took all of that away from him. For two months, officials at Silverdale refused to give Mr. Brown his life-saving medicine. They refused to give him an inhaler to treat his asthma. As the weeks wore on, he grew increasingly weak, eventually requiring the use of a wheelchair. He pleaded for attention from the nursing staff but was met with disdain and complaints about how overworked the nurses felt. His fellow inmates grew increasingly worried

about him and even attempted to stage a fight, throwing his wheelchair, just to get the nurses' attention. He developed a cough, chest pain, and shortness of breath. By the time he was finally brought to Erlanger on March 27, 2022, his HIV had rapidly progressed and caused him to develop pneumonia and sepsis. His prognosis was already grim, but he told doctors that he wanted to live. He fought hard for his life for two agonizing months until he finally succumbed to his illness. He left behind his mother and father, grandmother, three brothers, two sisters, and numerous aunts, uncles, nieces, and nephews, all of whom are devastated by his early and unjust passing.

Thanks to the miracles of modern medicine, HIV is no longer a death sentence. This should always be the case, regardless of whether one is incarcerated. Plaintiff hopes and prays that her son's story will bring a stop to the needless and preventable deaths occurring due to medical neglect committed by the officials at Silverdale.

## II. JURISDICTION AND VENUE

6. This action is brough pursuant to 42 U.S.C. § 1983. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the Eighth Amendment to the Constitution of the United States.

7. This Court has supplemental jurisdiction to adjudicate Plaintiff's state law claims related to the Plaintiff's federal claims in this action pursuant to 28 U.S.C. § 1367(a).

8. The venue is proper in the Eastern District of Tennessee under 28 U.S.C § 1391(b)(2) where Silverdale is located and where its operations are based.

## III. PARTIES

9. Plaintiff Chrystal Brown is DaQuarrius "Jay" Brown's mother and next-of-kin. She is a resident of Chattanooga, Tennessee.

10. Defendant Hamilton County is a municipality that was created by the State of Tennessee in 1819. It owns Silverdale and is responsible for its operations.

11. Defendant Sheriff Jim Hammond (hereinafter "Sheriff Hammond") is the former elected Sheriff of Hamilton County, sued in his individual and official capacity as sheriff, is an adult citizen of the State of Tennessee, and is domiciled in Hamilton County, Tennessee. Sheriff Hammond oversaw Silverdale and was responsible for the hiring, training, supervision, discipline, and control of the deputies under his command. He was responsible for all actions of the staff at Silverdale and was the final policy maker for Silverdale. He is liable both directly and vicariously for the actions complained of herein.

12. Defendant QCHC of Tennessee, PLLC ("QCHC"), is a professional limited liability company with its principal office in Brentwood, Tennessee. QCHC contracts with Silverdale to provide medical care to the inmates at Silverdale.

13. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 15, and therefore sues said Defendants by such fictitious names. DOES 1 through 15 may be natural persons or artificial persons. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible legally in some manner for the acts, conduct, omissions, and events referred to herein.

14. Plaintiff is informed and believes and thereon alleges that each Defendant acted at all times relevant herein as the agent, servant, employee, supervisor, co-venturer, subsidiary, and/or corporate-parent of each of the remaining Defendants. Plaintiff further alleges that the acts or omissions of any agent or employee of Defendants were done within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint

venture, subsidiary, and/or corporate-parent relationship. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same has been ascertained.

## IV. FACTUAL ALLEGATIONS

### *History of Medical Neglect, Inhuman Conditions, and Inmate on Inmate Violence at Silverdale*

15. Silverdale is notorious for its failure to provide proper medical care to inmates, inhuman living conditions, and inmate-on-inmate violence.

16. A Nashville-based private prison corporation, CoreCivic, formerly the Corrections Corporation of America, operated Silverdale from 1984 until Hamilton County took over operations in December of 2020.

17. Despite Hamilton County's takeover of the jail, failure to provide proper medical care to inmates, inhuman living conditions, and inmate-on-inmate violence have continued.

18. On October 5, 2020, five Silverdale inmates were charged with attempted first-degree murder arising from an attack on a fellow prisoner that lasted for one to two hours and left the victim with 73 stab wounds.

19. On April 23, 2021, multiple Silverdale inmates were stabbed numerous times by fellow inmates wearing towels over their faces when officers placed them in a new cell despite the victims warning the officers that they would be attacked.

20. On September 5, 2021, a Silverdale inmate was stabbed nine times, including once in the face, when officers failed to lock his cell door and ignored the victim's attempts to alert them to the mistake.

21. In February of 2022, an open records request filed by NewsChannel9 revealed that Silverdale failed an inspection conducted by the Tennessee Corrections Institute in

FEDERAL COMPLAINT WITH JURY DEMAND
Case 1:23-cv-00045-CLC-MJD     Document 1     Filed 02/27/23     Page 5 of 17     PageID #: 55

September of 2021. The inspection listed numerous deficiencies such as overcrowding in male housing units, multiple cameras in need of repair, and an HVAC unit in need of repair.

22. In March of 2022, a male Silverdale inmate was raped so savagely that he had to be released to a mental health facility with the likelihood of surgery necessary to repair the injuries incurred during the rape. The sentence he was serving was suspended.

23. In April of 2022, an inmate died of a drug overdose at Silverdale, where drugs are considered to be widely available due to neglect by officials.

24. On April 25, 2022, Hamilton County District Attorney General Neal Pinkston described Silverdale as "one of the most dangerous places to be in our county…" and claimed that it was "unacceptable." Sheriff Hammond responded saying that Pinkston "…hit the nail right on the head…"

25. In May of 2022, Silverdale failed a health inspection. Inspectors found rat droppings in the food storage area, no sanitizer present in washing buckets, and walls, floors, and ceilings that were dirty and in poor condition.

26. On May 16, 2022, an inmate was found dead in Silverdale. She was serving a 45-day sentence for drunk driving and was not provided the proper medication for her seizures and thyroid issues.

27. On July 23, 2022, four inmates escaped Silverdale. It took guards almost four hours to notice they were missing.

28. On October 16, 2022, an inmate died seven months into serving his sentence at Silverdale. He suffered from numerous infections brought on by malnutrition, and Erlanger staff commented that he might have survived had he been brought to the hospital sooner.

29. On December 20, 2022, yet another inmate was found dead in Silverdale. Officials have not yet released his cause of death. He was in jail on charges of speeding, evading arrest, endangerment, and a traffic violation.

30. Despite these multiple documented instances of medical neglect, inhuman living conditions, and violence, Plaintiff believes that Defendants have taken no action to prevent further deprivations of civil rights at Silverdale.

*Mr. Brown's Unnecessary and Preventable Death due to Medical Neglect Committed by Silverdale Officials*

31. Mr. Brown was first transferred to Silverdale in the beginning of February 2022. He was HIV-positive and suffered from asthma, but he was healthy and managing his illness thanks to medication prescribed by his primary physician.

32. Despite her difficult third-shift work schedule, Plaintiff spoke with her son everyday that he was incarnated at Silverdale and immediately realized that he was in trouble. They were not giving him his medicine.

33. Mr. Brown began to feel the effects of missing his medication almost immediately. He became weak and eventually required a wheelchair to get around. Other inmates had to bring him his food tray.

34. On March 14, 2022, Mr. Brown requested to see the nurse five times, but she never came. The next day, when the nurse finally came and he requested his medication, Mr. Brown reported that the nurse looked at him like he was a "disease" and remarked that she was overworked by forty other inmates asking for Tylenol.

35. Mr. Brown felt that Silverdale's staff treated him with disdain because he was a black gay male with HIV.

36. The next day when Plaintiff spoke with her son, he told her "I can't breath that good and my chest is hurting." Again, he waited in pain all day before being seen by a nurse.

37. Mr. Brown's condition rapidly deteriorated as each day passed. Plaintiff desperately called Silverdale and urged them to provide her son with his medication, but she was repeatedly told that staff was busy and to call back later.

38. Finally, on March 22, 2022, Plaintiff was informed that the nurse had drawn Mr. Brown's blood and that Plaintiff could bring him his medication. Plaintiff made the trip to Silverdale that night and handed the guards a white bag with his medication and inhaler.

39. However, when Plaintiff called the next day, on March 23, 2022, Mr. Brown reported that he still had not received any medicine. When Plaintiff questioned the nursing staff, she was told that it would take a few more days for staff to contact Mr. Brown's primary physician and confirm that he could receive the medication.

40. By this point, Mr. Brown's condition had deteriorated so far that he could barely speak. Yet, Silverdale continued to refuse to give him his life saving medication that was now in their hands.

41. On March 27, 2022, Plaintiff received a call from one of Mr. Brown's fellow inmates informing her that Mr. Brown was incredibly sick and appeared to be dead. That same day, she received a call from another inmate telling her that Mr. Brown was being taken in an ambulance to Erlanger. When Plaintiff called Silverdale, they refused to give her any information. When she called Erlanger, they told her they had nobody there by that name. At that point, Plaintiff did the only thing she knew to do and fell to her knees to pray. A couple of hours later, she received an anonymous call from Erlanger. The anonymous caller told her they were

currently looking at her son, and that he was hooked up to all kinds of machines with an officer by his side.

42. The next day, on March 28, 2022, Plaintiff again called Silverdale and was informed that Mr. Brown was still at their facility and not in the hospital. When she pressed the officer for more information, he became defensive and raised his voice at her. Throughout the day, Plaintiff tried calling Silverdale to get more information on her son but was either ignored or met with rude and nasty responses.

43. Three days later, on March 31, 2022, another inmate called Plaintiff asking about Mr. Brown's condition. This is when she learned that he had in fact been at Erlanger the entire time. Despite knowing exactly who Mr. Brown was, Silverdale officers had checked him into Erlanger as a "John Doe."

44. When Plaintiff was finally able to speak to her son, he informed her that the other inmates had to stage a fake fight, throwing his wheelchair in the process, just to get the guards to notice how sick he truly was.

45. When Plaintiff arrived at Erlanger and spoke to the doctors, they informed her that her son had been off his HIV medicine for too long. They described his body as acting out "World War 3 on his immune system." They told her the worst thing a mother can ever hear: that her son was dying.

46. Upon hearing his prognosis, Mr. Brown looked in his doctor's eyes and said "Please help me, I want to live."

47. Mr. Brown never left Erlanger Hospital alive. He died on May 26, 2022. He was only 23 years old.

## V. FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – VIOLATION OF EIGHTH AMENDMENT
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

48. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

49. The Civil Rights Act, as codified at 42 U.S.C. § 1983, provides as follows:

> "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

50. Pursuant to the Eighth Amendment, Mr. Brown, an inmate at Silverdale, had a constitutional right to be free from cruel and unusual punishment during his confinement, including a right to be provided with adequate medical care and humane living conditions.

51. Defendants acting individually and together, under the color of law, acted to violate Mr. Brown's rights when they ignored him as he slowly deteriorated in his cell and failed to provide him with the medicine that if provided in a timely manner would have saved his life.

52. Defendants understood their actions would result in the deprivation of Mr. Brown's constitutional rights as evidenced by the numerous incidents of inmates at Silverdale dying from medical neglect, the failed inspections at Silverdale, and the public outcry from both that preceded Mr. Brown's treatment.

53. Defendants' intentional, unreasonable, reckless, and deliberately indifferent acts were the moving force behind the violation of Mr. Brown's constitutional rights and his resulting serious injuries.

54. Mr. Brown's rights to be provided adequate medical care and confined in humane living conditions are both well-established, and reasonable persons in Defendants' position would have known or should have known that their actions would result in a violation of Mr. Brown's constitutional rights.

## VI. SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – *MONELL* LIABILITY
### BROUGHT BY PLAINTIFF AGAINST DEFENDANTS HAMILTON COUNTY AND SHERIFF HAMMOND

55. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

56. Hamilton County—through the decisions of its policymaker Sheriff Hammond—was directly responsible for the deprivation of Mr. Brown's constitutional rights as described herein and is thus subject to liability under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs of New York*, 436 U.S., 658, 691 (1978).

57. At all times material to this claim, Defendants Hamilton County and Sheriff Hammond failed to train, adequately supervise, and discipline officers regarding the provisioning of adequate medical care and maintenance of humane living conditions.

58. Defendants knew of the multiple failures in policy at Silverdale, as established by the instances cited herein, but nevertheless continued to operate the facility with minimal adjustments.

59. Defendants were aware of the need to supervise, train, investigate, and discipline their subordinates to mitigate unreasonable risks of harm to inmates in Defendants' custody.

60. Despite this knowledge, Defendants failed to adequately train, supervise, or discipline individuals who engaged in these behaviors. This failure to train, supervise, and

discipline was a moving force behind the serious harm and violation of constitutional rights suffered by Mr. Brown.

61. As final policymakers, these Defendants acting individually and collectively, engaged in, established, condoned, ratified, and encouraged customs, policies, usages, practices, patterns, and procedures that they knew would and did directly and proximately create conditions of confinement that failed to mitigate serious risks of harm and violations of constitutional rights.

62. Further, these Defendants failed to establish and maintain policies to mitigate known serious risks of harm, and these Defendants should have known that such failures would deprive people in their custody, including Mr. Brown, of constitutional rights.

63. Defendants were aware that the policies, procedures, practices, customs, and usages they established and those they failed to establish would result in violations of constitutional rights.

64. These policies and practices specifically included Defendants' practice of failing to adequately classify inmates or develop and implement an adequate classification plan, failing to ensure adequate investigation into critical incidents, failing to implement corrective action plans to address the known substantial risks of harm described herein , failing to ensure deputies were observing housing units, failing to investigate incidents of harm, failing to provide appropriate training, disciplinary procedures, and supervision of staff, failing to ensure adequate staffing so as to effectively create inhumane conditions of confinement and deficient provisioning of medical care that allowed known substantial risks of serious injury to go unmitigated, failing to follow or enforce basic jail guideline requirements, failing to establish or enforce policies regarding the proper provisioning of medical care to inmates, failing to engage

in oversight sufficient to prevent constitutional rights violations, and failing to adequately respond to obvious violations of constitutional rights of people held at Silverdale.

65. These actions, and failures to act, were a moving force in the substantial risk of harm and unconstitutional conditions of confinement leading to Mr. Brown's death.

66. At all times material to this claim, Defendants were acting under color of law and in the course and scope of their employment. Defendants acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety and constitutional rights of Mr. Brown by failing to mitigate known serious risks of harm. The above-described widespread practices, which were so well-settled as to constitute the de facto policy of the Defendants, were allowed to exist because policymakers with authority over these acts exhibited deliberate indifference to the problems, thereby effectively ratifying them.

67. The policies, practices, and customs set forth above were the driving force behind the numerous constitutional violations in this case that directly and proximately caused Mr. Brown's death.

## VII. THIRD CAUSE OF ACTION

### TENNESSEE COMMON LAW NEGLIGENCE
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

68. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

69. Defendants owed a legal duty of care to Mr. Brown to protect him from reasonably foreseeable harm.

70. Defendants knew or should have known that Mr. Brown was HIV-positive, had asthma, and would suffer harm if not given his medication and inhaler, but they failed to use reasonable care to prevent said harm.

71. Defendants' breaches of their duty of care to Mr. Brown directly and proximately caused Mr. Brown's death.

## VIII. FOURTH CAUSE OF ACTION

### LOSS OF CONSORTIUM
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

72. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

73. Tennessee allows for an award of damages for loss of filial consortium and other damages for the death of one's child under Tenn. Code Ann. § 20-5-113. *See Hancock v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 54 S.W.3d 234, 236 (Tenn. 2001).

74. Defendants' wrongful acts, faults, omissions, and tortious misconduct caused Plaintiff to suffer a loss of filial consortium and other damages arising from the death of her beloved son.

75. Accordingly, Plaintiff is entitled to an award of damages, including the pecuniary value of Mr. Brown's life and the loss of her son's attention, guidance, care, protection, companionship, cooperation, affection, and love.

## IX. FIFTH CAUSE OF ACTION

### TENN. CODE ANN. § 1-3-121
### BROUGHT BY PLAINTIFF AGAINST ALL DEFENDANTS

76. Plaintiff adopts and incorporates by reference all preceding paragraphs as if fully set forth herein.

77. Defendants knowingly and deliberately failed to ensure constitutionally adequate levels of inmate safety, living conditions, and medical care at Silverdale.

78. Tenn. Code Ann. § 1-3-121 enables Plaintiff to vindicate claims for declaratory and injunctive relief in cases involving illegal and unconstitutional government action. It specifically provides that: "Notwithstanding any law to the contrary, a cause of action shall exist under this chapter for any affected person who seeks declaratory or injunctive relief in any action brought regarding the legality or constitutionality of a governmental action."

79. Defendants' chronic deliberate indifference to inmate safety, medical needs, and living conditions contravenes the provisions of the Eighth Amendment to the United States Constitution.

80. Defendants' actions additionally contravene Tenn. Const. art I, § 32, which provides: "That the erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for."

81. Absent, at minimum, regular independent monitoring and unannounced inspections designed to determine whether Defendants have remedied their chronic deliberate indifference to inmate safety, medical needs, and living conditions, Defendants will continue to act both illegally and unconstitutionally with respect to their operation of Silverdale.

82. To remedy Defendants chronically illegal and unconstitutional actions at Silverdale, this Court should appoint an independent monitor to conduct regular unannounced inspections of Silverdale and report whether Defendants have remedied their chronic unlawful conduct.

83. In the absence of Defendants coming into compliance with their obligation to ensure constitutionally adequate levels of inmate safety, medical care, and living conditions, this Court should issue an injunction permanently enjoining Defendants from continuing to operate Silverdale going forward.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays for judgment as follows:

A. For general damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

B. For special damages plus interest, including prejudgment interest, in an amount to be determined by proof at trial;

C. For other economic and compensatory damages, in an amount to be determined by proof at trial;

D. For punitive and exemplary damages, including treble damages, as permitted;

E. For costs of suit incurred herein;

F. For reasonable attorneys' fees;

G. That this Court declare that Defendants acted illegally by failing to ensure constitutionally adequate levels of inmate safety, medical attention, and living conditions at Silverdale.

H. That this Court appoint an independent monitor to conduct regular unannounced inspections at Silverdale and report whether Defendants have remedied their chronic unlawful conduct, and that this Court issue an injunction permanently enjoining Defendants from continuing to operate Silverdale if they fail to do so; and

G. For such other and further relief as this Court deems just and proper.

Dated this 27th day of February 2023.

/s/ Derek A. Jordan
Derek A. Jordan, BPR No. 34299
W. Alan Rose, BPR No. 28903
Corey A. Spearman, BPR No. 40495
THE LAW FIRM, PLLC
111 NW Atlantic Street
Tullahoma, Tennessee 37388
Telephone: (931) 222-4010
email:  derek@thefirm.law
        alanrose@thefirm.law
        coreyspearman@thefirm.law

*Attorneys for Plaintiff*